1

2

3

4

5

6

7

8                       IN THE UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10   IVAN GALVAN,

11              Petitioner,               No. CIV S-00-1142 DFL DAD P

12        vs.

13   ROBERT L. AYERS,

14              Respondent.               FINDINGS & RECOMMENDATIONS

15   _____/

16             Petitioner is a state prisoner proceeding through counsel with an application for a

17   writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 1996 conviction on

18   charges of special circumstance first degree murder with personal use of a firearm and robbery

19   with personal use of a firearm.  He seeks relief on the grounds that: (1) his trial counsel

20   effectively abandoned him, resulting in a constructive denial of his Sixth Amendment right to

21   counsel; (2) trial counsel has a pattern and practice of providing his clients in criminal cases with

22   constitutionally inadequate representation and provided petitioner with prejudicially ineffective

23   assistance of counsel; (3) petitioner's due process right to a fundamentally fair trial was

24   compromised when the trial court refused to grant a continuance so defense counsel could

25   present expert testimony by Lee Smith, a former officer in the Sacramento County Sheriff's

26   Department gang suppression unit, concerning gang-related matters that were central to the

1

defense theory of the case; (4) the trial court erroneously failed to instruct the jury on the concept of reasonable foreseeability and erroneously denied petitioner's request for jury instructions on third party culpability and voluntary intoxication; (5) the trial judge was not impartial; and (6) cumulative error requires that habeas relief be granted and that his conviction be vacated.  Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief be denied.

PROCEDURAL BACKGROUND

On June 8, 1995, an information was filed in the Sacramento Superior and Municipal Court charging petitioner and co-defendant Gonzalo Acuna with murder, in violation of Cal. Penal Code § 187(a) (count 1) and robbery, in violation of Cal. Penal Code § 211 (count 2).  (Clerk's Transcript on Appeal (CT) at 8-10.)  It was alleged, as to both counts, that petitioner and co-defendant Acuna personally used a firearm in the commission of the offenses.  (Id.)  It was also alleged, as a special circumstance, that the murder was committed during the commission of the robbery.  (Id. at 9.)

Jury trial commenced on July 22, 1996.  (Id. at 171.)  On July 30, 1996, the jury found petitioner and co-defendant Acuna guilty on both counts and found the firearm and special circumstance allegations to be true.  (Id. at 180, 183-84.)  On September 27, 1996, petitioner was sentenced to life in prison without the possibility of parole for the murder plus ten years for the firearm enhancement.  (Id. at 189.)  The sentence on the robbery conviction was stayed pursuant to Cal. Penal Code § 654.  (Id.)

Petitioner filed a timely appeal, claiming that: (1) his rights to present a defense, to due process and to the effective assistance of counsel were violated when the trial court denied his request to reopen his case to present the testimony of a gang expert; (2) the trial court erroneously denied his request for a pinpoint instruction on third party culpability; and (3) the trial court erroneously refused to give a requested jury instruction on voluntary intoxication. (Am. Answer, Ex. C.)  The California Court of Appeal for the Third Appellate District affirmed

2

1   petitioner's conviction in its entirety in an unpublished order filed February 24, 1998.  (Id.)  In an

2   order filed May 13, 1998, the California Supreme Court summarily denied review.  (Am.

3   Answer, Ex. E.)

4           On or about May 13, 1999, petitioner filed a petition for writ of habeas corpus in

5   the Sacramento County Superior Court.  (Am. Answer, Ex. F.)  Therein, he set forth a factual

6   basis for each of his federal claims except the pattern-and-practice claim of ineffective assistance

7   of counsel alleged as ground two in the amended federal habeas petition.  (Id.)  That petition was

8   denied by the Superior Court in a reasoned opinion dated June 9, 1999, which concluded that

9   most of petitioner's claims were procedurally barred and that petitioner had failed to make a

10  prima facie showing as to any of his claims.  (Am. Answer, Ex. G.)  On September 8, 1999,

11  petitioner filed a petition for writ of habeas corpus in the California Court of Appeal for the

12  Third Appellate District.  (Am. Answer, Ex. H.)  Therein, he raised the same claims and added a

13  claim that petitioner's trial and appellate counsel were ineffective in failing to challenge the trial

14  court's failure to give a jury instruction on the concept of reasonable foreseeability.  (Id.)  That

15  petition was summarily denied by order dated September 23, 1999.  (Am. Answer, Ex. I.)

16          On September 28, 1999, petitioner filed a petition for writ of habeas corpus in the

17  California Supreme Court, raising the same claims raised in his habeas petition to the California

18  Court of Appeal.  (Am. Answer, Ex. J.)  On December 20, 1999, petitioner filed a supplemental

19  petition in the California Supreme Court, offering additional evidence in support of his claim of

20  ineffective assistance of counsel and claiming, for the first time, the constructive denial of the

21  right to counsel.  (Am. Answer, Ex. K.)  On March 29, 2000, the court denied that petition with

22  citation to In re Waltreus, 62 Cal. 2d 218, 225 (1965); In re Dixon, 41 Cal. 2d 756, 759 (1953);

23  In re Swain, 34 Cal. 2d 300, 304 (1949); and People v. Duvall, 9 Cal. 4th 464, 474 (1995).  (Am.

24  Answer, Ex. L.)

25  /////

26  /////

3

Petitioner filed his federal habeas petition on May 24, 2000.[1]  On September 13, 2000, respondent filed a motion to dismiss the petition as barred by the applicable statute of limitations and as procedurally defaulted.  By order dated August 30, 2001, respondent's motion to dismiss was denied.  Respondent filed an answer on December 19, 2001.

On February 25, 2002, petitioner applied for a stay of the federal proceedings pending exhaustion of an unexhausted claim based on newly discovered evidence.  Petitioner commenced a second round of state habeas proceedings by filing a habeas petition in the Sacramento Superior Court on the same date he applied for a stay of the federal proceedings. (Pet'r's Application for Order Staying Federal Habeas Proceedings, Ex. A at 2-4, lodged February 25, 2002.)  That new state petition presented the pattern-and-practice claim of ineffective assistance of counsel later alleged as ground two in the amended federal habeas petition.  (Id.)  The Superior Court denied the petition in a reasoned decision on March 14, 2002. (Am. Pet. at 5-6.)  A habeas petition filed in the California Court of Appeal was denied on April 11, 2002.  (Id. at 6.)  The California Supreme Court summarily denied review on July 10, 2002. (Id.; Pet'r's Status Report filed July 11, 2002, & Ex. A.)  On July 31, 2002, petitioner filed his amended federal habeas petition, upon which this action is proceeding.  On November 15, 2002, respondent filed an amended answer and on December 20, 2002, petitioner filed a traverse.

By order dated September 14, 2004, petitioner's request for an evidentiary hearing was granted.  On October 27, 2004, an evidentiary hearing was held on petitioner's claim that his trial counsel effectively abandoned petitioner and constructively denied him his Sixth Amendment right to counsel, as alleged in ground one of the amended petition, and on petitioner's allegations that defense counsel provided prejudicially ineffective assistance in the

/////

/////

---

[1]  See Valerio v. Boise Cascade Corp., 80 F.R.D. 626, 635 n.l (N.D. Cal. 1978) (judicial notice may be taken of court records), aff'd, 645 F.2d 699 (9th Cir. 1981).

specific ways alleged in ground two of the amended petition.[2]  On December 8, 2004, petitioner

filed a post-evidentiary hearing brief and on December 16, 2004, respondent filed an evidentiary

hearing summation brief.

FACTUAL BACKGROUND[3]

At about 3:45 p.m. on February 17, 1995, defendant and two other Hispanic men robbed the Courtland Market and shot and killed the clerk, Bora Vong Phan Vong Sa.  Defendant and his accomplices ran out of the market, got into a Ford Thunderbird and sped off. Christopher Annis, who had just driven up to the D Gas Station next door to the market, witnessed the men running out of the market with guns.  He yelled out "guns" and the license number of the Thunderbird.  Christopher's brother, Allen Annis, wrote the number down.  Allen also saw three Hispanic men.  The Thunderbird was registered to Gonzalo Acuna's mother-in-law, Carmen Trillo.  The police set up surveillance of Trillo's residence in Sacramento.  Shortly thereafter, at about 4:30 p.m., defendant and Acuna arrived in the Thunderbird.  Acuna was driving.  Two semi-automatic weapons, a Cobray and a Lorcin, were recovered. The Cobray was found next to the driver's door on the ground. The Lorcin was found under the car on the passenger side. Defendant and Acuna each had about $50.

Phan Vong Sa died from a gunshot wound to the back of the head. He also suffered a gunshot wound that went through his chest and arm.  A bullet removed from Phan Vong Sa and a spent cartridge case found at the market came from the Cobray.  A spent projectile found at the market was consistent with having been fired by the Lorcin.

Anthony Esquivel saw Acuna and defendant in Trillo's car the morning of the robbery and murder.  Defendant showed him the Lorcin.  Esquivel testified that defendant and Acuna were members of the Nortenos gang.

At trial, Christopher Annis positively identified defendant as one of the men who ran out of the market.  Allen Annis thought defendant looked familiar.  Allen and Christopher Annis identified defendant from a photo lineup.

---

[2]  The court did not hear testimony on petitioner's claim that defense counsel has a pattern and practice of providing constitutionally inadequate representation.

[3]  The following summary is drawn from the February 25, 1998 opinion by the California Court of Appeal, Third Appellate District (hereinafter Opinion), at pgs. 2-4, filed on November 15, 2002, as Exhibit C to respondent's amended answer.

Defendant testified. One or two nights before the robbery/murder, defendant purchased the Lorcin using $80 from his paycheck. The next morning, defendant showed the gun to Esquivel. Defendant and Esquivel met Acuna at a park. Acuna was driving the Thunderbird. They drove to Elmo's liquor store where defendant bought at 12-pack of beer. They went to Temple Park where they met two Hispanic men with whom they shared their beer. The two men were wearing dark clothing. One had on a black windbreaker and a black wool knit cap. Although defendant knew the names of the two men, he refused to reveal them because he feared retribution from their gang. Upon finishing the beer, defendant bought another 12-pack at Elmo's. Defendant, Acuna and the two men went to the river where they all took turns shooting defendant's and Acuna's guns. The guns were then placed under the front seat. When they stopped for more beer, Acuna and defendant stayed in the car while the two men went into the Courtland Market. Defendant did not notice if they took the guns. He heard no gunshots but the radio was very loud. The two men returned to the car and acted crazy. One of the men put something under the front seat. They had not bought any beer. Acuna drove back to Elmo's where they dropped off the two men. Defendant did not "feel like going to work" because he felt "a little buzzed." Acuna and defendant then drove to Trillo's house where they were arrested.

Defendant did not know if the two Hispanic men "killed the guy or not."

## ANALYSIS

I. Standards of Review Applicable to Habeas Corpus Claims

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. See Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)). A federal writ is not available for alleged error in the interpretation or application of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.

However, a "claim of error based upon a right not specifically guaranteed by the Constitution may nonetheless form a ground for federal habeas corpus relief where its impact so infects the entire trial that the resulting conviction violates the defendant's right to due process." Hines v. Enomoto, 658 F.2d 667, 673 (9th Cir. 1981) (citing Quigg v. Crist, 616 F.2d 1107 (9th

Cir. 1980)).  See also Lisenba v. California, 314 U.S. 219, 236 (1941); Henry v. Kernan, 197

F.3d 1021, 1031 (9th Cir. 1999).  In order to raise such a claim in a federal habeas corpus

petition, the "error alleged must have resulted in a complete miscarriage of justice."  Hill v.

United States, 368 U.S. 424, 428 (1962).  See also Henry, 197 F.3d at 1031; Crisafi v. Oliver,

396 F.2d 293, 294-95 (9th Cir. 1968).  Habeas corpus cannot be utilized to try state issues de

novo.  Milton v. Wainwright, 407 U.S. 371, 377 (1972).

   Because this action was filed after April 26, 1996, the provisions of the

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are applicable.  See Lindh v.

Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003).

Section 2254(d) as amended by the AEDPA, sets forth the following standards for granting

habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court shall
> not be granted with respect to any claim that was adjudicated on
> the merits in State court proceedings unless the adjudication of the
> claim -
>
>  (1) resulted in a decision that was contrary to, or involved
> an unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
>  (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d).  See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v.

Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

II.  Procedural Default

   Respondent renews his arguments, previously rejected by this court, that all of the

claims presented by petitioner in his amended petition are barred due to procedural default.  (Am.

Answer at 16-25.)  For the reasons set forth in this court's order dated August 30, 2001, the court

concludes that petitioner's claims are not procedurally barred.

/////

III.  Petitioner's Claims[4]

    A.  Continuance/Admission of Evidence

       Petitioner claims that his right to present a defense and to a fair trial were violated when the trial court refused to allow him to present the expert testimony of Deputy Sheriff Lee Smith (Smith) to support his defense theory.[5]  As described above, petitioner declined to reveal at trial the names of the other two persons who were with him and his co-defendant at the scene of the crime.  Petitioner explains that had Smith testified, he would have explained to the jury that petitioner could not disclose the identities of the two alleged actual perpetrators of the homicide because if he did so, he and his family would be in "grave" danger of retaliation from the perpetrators' fellow gang members.  Petitioner argues that because his trial attorney failed to issue a subpoena to Smith, and because of several erroneous rulings by the trial judge, he was unable to present this evidence critical to his defense.

       In support of this claim, petitioner has filed a declaration wherein Smith sets forth his qualifications as an expert and describes the testimony he would have given had he been called as a witness at petitioner's trial.  (Am. Pet., Ex. B.)  Smith states in his declaration that if a Norteno gang member were to ever "snitch" on a fellow gang member, he and/or his family would be subject to retaliation and even death, either in prison or on the streets.  (Id. at 2.)  Petitioner argues that "the trial court should have allowed [him] to present thorough, complete,

---

[4]  For purposes of clarity, the court will not analyze petitioner's claims in the order in which they were presented in the amended petition.

[5]  Petitioner summarizes his defense theory as follows:

> Though Galvan and Acuna were present at the D Gas Station on February 17, 1995, at the time of the homicide, neither of them participated in the killing itself nor any planning to commit a homicide.  Two individuals who went to the D Gas Station with Galvan and Acuna went inside the gas station's mini-mart while Galvan and Acuna remained outside in a vehicle.  Presumably, said two individuals committed the homicide.

Points and Authorities in Support of Amended Petition (P&A) at 48.

and credible evidence concerning his involvement in the Norteno gang and the reasons why his involvement in the gang prevented him from disclosing the identities of the perpetrators." (P&A at 54.)

Petitioner's argument was rejected on direct appeal by the California Court of Appeal in a written decision. (Am. Answer, Ex. C.) The same argument was presented by petitioner in his petition for review which was summarily denied by the California Supreme Court. (Am. Answer, Ex.E.) In its decision the state appellate court fairly summarized the relevant background, as follows:

> When the prosecutor asked defendant on cross-examination for the names of the two men, defendant refused to reveal them because he was afraid of retribution from their gang. The court admonished defendant that if he persisted in his refusal to name them, his entire testimony would be stricken. Out of the jury's presence, defense counsel objected to the court's intended ruling to strike defendant's testimony and to admonish the jury. He explained he had an expert, Sacramento County Deputy Sheriff Lee Smith, currently a courtroom bailiff, who had previously worked in a gang unit. Smith knew defendant and would explain the consequences of informing upon a fellow Norteno-Soreno. The court reconsidered upon the prosecutor's request, let the testimony stand but instructed the jury that defendant's failure to reveal the names of the two men was "a credibility matter or circumstance" to consider "in weighing the testimony of this witness." The prosecution thereafter finished its cross-examination of defendant. The court recessed that Friday afternoon until Monday morning. The court stated to the parties that it wanted the prosecutor to have his rebuttal witnesses available for Monday as well as arguments Monday. Defense counsel was asked and responded that he had no additional witness "[a]s of right now" and Acuna's attorney had none.
>
> On Monday morning, the prosecution recalled Esquivel who had previously testified that defendant was a Norteno gang member to explain whether he had seen defendant's backpack from which he had removed the gun. On cross-examination, Esquivel was then allowed over the prosecution's objection to testify that if a Norteno discloses the name of another Norteno in connection with a serious felony offense, the informer could be killed.
>
> Outside the presence of the jury, the prosecutor complained that the defense was allowed to question Esquivel about gang retaliation when the prosecution thought the court had resolved to allow gang expert testimony if Smith qualified and defense counsel would make an offer of proof. Defense counsel explained that due to the

court's admonishment, Smith's testimony would go to defendant's credibility.

The court planned to hold an Evidence Code section 402 hearing to determine whether Smith qualified as an expert.  Smith was ill that afternoon and unavailable to testify until the next morning (Tuesday).  Defense counsel made an offer of proof.  Smith, a former member of the Sacramento Gang Suppression Unit, would testify that if a Norteno gang member testified against another Norteno gang member, he and his family would suffer punishment, possibly death.  Smith recognized defendant's street name and knew who he was.  Defense counsel requested a continuance for the section 402 hearing until the next morning.  The court initially denied the request for a continuance stating that the parties had already agreed to argue the case that afternoon, that Smith may or may not qualify as an expert, and that defendant had already testified he would suffer dire consequences if he revealed the names of the two men.

The prosecutor argued that defendant had failed to set forth a factual foundation showing relevance for a section 402 hearing.  Defense counsel then asked for a ruling treating the offer of proof as the section 402 hearing.  After an off-the-record discussion, the prosecutor stated that Smith had only qualified as an expert on a prison gang but had "never been qualified as an expert in the area of Nortenos and Servanos [sic]."  Defense counsel confirmed that Smith had "never qualified before."  Defense counsel then represented that someone else, Ron Montez, would be available to testify as an expert that morning at 11:30 a.m.

After the prosecutor's criminalist testified, the prosecution rested.  Defense counsel informed the court he had no evidence but wanted "to reserve our previous discussion about the 402 hearing for tomorrow morning."  After an off-the-record conversation, defense counsel stated he had no witness available for 11:30 a.m.  The court stated, "Subject to your 402 request, no other evidence?"  Defense counsel responded, "No other evidence."  Defense counsel agreed that he rested.  Later, for the record, defense counsel noted that Montez had canceled and the section 402 hearing was with Smith.  The court noted defense counsel's offer of proof showed that Smith had not qualified as an expert and was unavailable that date.

After the prosecutor made his opening argument and defense counsel made his closing argument, the court recessed for the evening.

The next morning prior to closing argument by Acuna's attorney, defense counsel, who appeared with Smith, renewed his request for a section 402 hearing and requested to reopen for Smith's testimony.  Defense counsel stated that Smith had previously

1   qualified as a gang expert and had agreed to testify without being
    subpoenaed.  The court denied defense counsel's request.

2

3   (Opinion at 4-8.)

4          The California Court of Appeal did not reach the question of whether the trial

5   court erred in denying petitioner's request for a continuance and/or to reopen the case to

6   determine whether Mr. Smith was competent to testify as an expert.  Instead, the appellate court

7   concluded that any error in this regard was "harmless beyond a reasonable doubt."  (Id. at 9.)

8   The court explained its reasoning as follows:

9          The jury heard Esquivel's uncontradicted testimony that a Norteno
           could be killed who pointed the finger at another member.

10         Defendant was positively identified as one of the three men who
           ran out of the market with a gun.  When he was arrested a short

11         time after the crime, defendant had in his possession one of the
           weapons used in the crime.  We see no possibility of a result more

12         favorable to defendant had Smith been allowed to testify as to gang
           retaliation.  (Chapman v. California (1967) 386 U.S. 18, 24 [17

13         L.Ed.2d 705, 710-711].)

14  (Id. at 9-10.)

15         In his petition for a writ of habeas corpus filed in the Sacramento County Superior

16  Court after the California Court of Appeal had affirmed his judgment of conviction on appeal,

17  petitioner argued that witness Smith's declaration was "new information" which demonstrated

18  that the trial court's committed prejudicial error in precluding Smith's testimony.  The Superior

19  Court rejected that argument, stating as follows:

20         Petitioner is mistaken.  Smith's declaration is only cumulative to
           what petitioner himself and witness Esquivel testified to at trial,

21         that a gang member would endanger his life if he named another
           gang member as the perpetrator.  The declaration does not reveal

22         any constitutional error that strikes at the heart of the trial process,
           as is needed to get beyond the Waltreus bar.  Nor does it show an

23         error of constitutional magnitude that led to a trial that was so
           fundamentally unfair that absent the error no reasonable judge or

24         jury would have convicted the petitioner, or that petitioner is
           actually innocent of the crime or crimes of which the petitioner is

25         convicted, as is needed to get beyond the Clark bar.  Eyewitness

26  /////

11

> Christopher Annis testified that he saw petitioner run out of the market with a gun in his hand, and Smith's declaration contains nothing to refute that testimony.

(Am. Answer, Ex. G at 4.)

The California Court of Appeal and the Superior Court both assumed, without deciding, that the trial court erred in failing to grant petitioner a continuance under these circumstances. Both state courts proceeded directly to the question of whether petitioner suffered any prejudice as a result of the error. The undersigned will take the same approach. In order to grant habeas relief where a state court has determined that a constitutional error was harmless, a reviewing court must determine: (1) that the state court's decision was "contrary to" or an "unreasonable application" of United States Supreme Court precedent with respect to harmless error, and (2) that the petitioner suffered prejudice under Brecht v. Abrahamson, 507 U.S. 619 (1993) from the constitutional error. Inthavong v. LaMarque, 420 F.3d 1055, 1059 (9th Cir. 2005), petition for cert. filed (Nov. 23, 2005).[6] Because both of these requirements must be satisfied before relief can be granted, a habeas court may address them in any order. Id. at 1061. The undersigned will first address whether petitioner suffered prejudice under Brecht as a result of the trial court's failure to grant a continuance to determine whether petitioner's expert witness would be allowed to testify.

On collateral review, an error is not "harmless" if it "had substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 637. In determining whether an error is harmless, the question is "what effect the error had or reasonably may be taken to have had upon the jury's decision.'" Wade v. Calderon, 29 F.3d 1312, 1322 (9th Cir. 1994) (quoting Brecht, 507 U.S. at 642-43 (Stevens, J., concurring)), overruled on other grounds

---

[6] As recognized by the court in Inthavong, the Second Circuit has done away with the Brecht standard in light of the AEDPA and the Supreme Court's decision in Mitchell v. Esparza, 540 U.S. 12 (2003), while the Eighth Circuit has at least questioned Brecht's continued vitality. 420 F.3d at 1059 and n.2 & n.3 (citing Zappulla v. New York, 391 F.3d 462, 467, 474-75 (2d Cir. 2004); Gutierrez v. McGinnis, 389 F.3d 300, 306-07 (2d Cir. 2004); Whitmore v. Kemna, 213 F.3d 431, 433 (8th Cir. 2000)).

by <u>Rohan ex rel. Gates v. Woodford</u>, 334 F.3d 803, 815 (9th Cir. 2003).  Accordingly, an error is

not harmless if a reviewing court is "in grave doubt" as to whether the error had "substantial and

injurious effect or influence."  <u>O'Neal v. McAninch</u>, 513 U.S. 432, 435 (1995).

As explained by the California Court of Appeal and California Superior Court,

evidence that petitioner might be subject to retaliation if he identified those he claimed were the

actual perpetrators of the crime was cumulative of other evidence introduced at his trial.

Specifically, petitioner himself testified that he could not identify the actual perpetrators because

if he did, he was "going to be killed."  (Reporter's Transcript on Appeal (RT) at 520.)

Prosecution witness Anthony Esquivel corroborated petitioner's testimony on this point.  (RT at

556-57.)  In this regard, on cross-examination Esquivel testified as follows:

> Q.  (By Mr. Holmes) What happens if one Norteno gives up a brother, another Norteno, for a serious felony offense; in other words, discloses his name?
>
> * * *
>
> A.  As far as I know he could be killed, you know, depending on where he's at, what happens, you know, the seriousness of the –
>
> Q.  (By Mr. Holmes) What about family members and things like that?  Are they in jeopardy as well?
>
> A.  I assume they could be.
>
> MR. HOLMES: Thank you.
>
> THE COURT: I think we are in an area of speculation.
>
> MR. HOLMES: That is all I have.
>
> THE COURT: Mr. Bigelow?
>
> MR. BIGELOW: No.
>
> THE COURT: Obviously it's not influencing you, is it?  You are telling the truth.
>
> THE WITNESS: Yeah.

(<u>Id.</u> at 556-57.)

This testimony placed before the jury testimony from which they could conclude that petitioner could be subject to retaliation if he identified those he claimed were the actual perpetrators of the crime.  See Crane v. Kentucky, 476 U.S. 683, 690 (1986) (the Constitution guarantees a criminal defendant a meaningful opportunity to introduce relevant evidence on his behalf).  Petitioner now attempts to diminish the significance of this testimony, arguing that the jury may not have found it credible because he had an obvious motive to fabricate testimony in support of his own defense and due to the trial judge's undermining of Esquivel's testimony by referring to it as "an area of speculation."  This undersigned does not agree.  The jury heard testimony from both petitioner and prosecution witness Anthony Esquivel that petitioner could not reveal the names of those gang members who he claimed committed the crime because his life would be in jeopardy if he did.  The proposition that a gang member would be retaliated against if he provided information inculpating another gang member of a murder, is hardly a novel one nor was it controverted by any other evidence introduced at trial.  Testimony to that effect did not need to be repeated for the third time, even by an "expert," in order to apprise the jury of its significance.  It would have been obvious to the jury, if they believed petitioner's testimony that the two other men were the perpetrators, that petitioner would want to avoid directly implicating two street gang members for a murder of which petitioner had been accused for fear of retaliation.  Certainly, the lack of expert testimony confirming the testimony of petitioner and Esquivel on this point did not prevent petitioner from presenting his defense of third-party culpability to the jury.  That defense was presented by way of petitioner's own testimony and was argued by his counsel at trial.  (See RT at 538-40, 668-71, 677-79.)  The fact that the jury did not believe the defense does not mean that petitioner was prevented from presenting it.

Finally, as noted by the California Court of Appeal, the evidence against petitioner was substantial.  He was positively identified by an eyewitness as one of the persons who ran out of the liquor store after the shooting took place.  The two guns involved in the crime were found,

one on the ground next to the driver's order and the other under the car on the passenger side of

a car driven by petitioner's co-defendant Acuna in which petitioner was riding as the passenger.

Petitioner and Acuna each had cash on their persons at the time they were apprehended.  Anthony

Esquivel saw Acuna and petitioner in the getaway car on the morning of the crime and petitioner

showed Esquivel one of the murder weapons at that time.  Under these circumstances, the trial

court's failure to grant a continuance of the trial in order to determine whether witness Smith

would be allowed to testify on a point the jury had already heard testimony on did not render

petitioner's trial fundamentally unfair or have an injurious effect on the verdict.  Brecht, 507 U.S.

at 637.  Because petitioner has failed to demonstrate prejudice under the Brecht standard, he is

not entitled to habeas corpus relief on this claim.  Inthavong, 420 F.3d at 1062.

### B.  Jury Instruction Error

Petitioner raises several claims of jury instruction error.  After setting forth the

applicable legal principles, the court will analyze these claims in turn below.

### 1.  Legal Standards

In general, a challenge to jury instructions does not state a federal constitutional

claim.  See Middleton, 768 F.2d at 1085 (citing Engle, 456 U.S. at 119); Gutierrez v. Griggs, 695

F.2d 1195, 1197 (9th Cir. 1983).  In order to warrant federal habeas relief, the challenged jury

instructions "cannot be merely 'undesirable, erroneous, or even "universally condemned,"' but

must violate some due process right guaranteed by the fourteenth amendment."  Prantil v.

California, 843 F.2d 314, 317 (1988) (quoting Cupp v. Naughten, 414 U.S. 141, 146 (1973)).  To

prevail on such a claim petitioner must demonstrate "that an erroneous instruction 'so infected the

entire trial that the resulting conviction violates due process.'"  Prantil, 843 F.2d at 317 (quoting

Darnell v. Swinney, 823 F.2d 299, 301 (9th Cir. 1987)).  See also Estelle, 502 U.S. at 72.  In

making its determination, this court must evaluate the challenged jury instructions "'in the

context of the overall charge to the jury as a component of the entire trial process.'"  Prantil, 843

F.2d at 817 (quoting Bashor v. Risley, 730 F.2d 1228, 1239 (9th Cir. 1984)).  Where the

1   challenge is to a refusal or failure to give an instruction, the petitioner's burden is "especially

2   heavy," because "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than

3   a misstatement of the law." Henderson v. Kibbe, 431 U.S. 145, 155 (1977). See also Villafuerte

4   v. Stewart, 111 F.3d 616, 624 (9th Cir. 1997).

5                2.   Instruction on Reasonable Foreseeability

6           Petitioner argues that the trial court erred in failing to sua sponte give a jury

7   instruction explaining the concept of "reasonable foreseeability." (Am. Pet. at 8; P&A at 54-57.)

8   He argues that because the prosecution proceeded on the theory that petitioner could be found

9   guilty of murder as a co-conspirator and/or an aider and abettor, the trial court was required to

10  instruct the jury that in order to convict on a theory of derivative liability, it had to find that the

11  homicide was reasonably foreseeable to petitioner at the time of his involvement in the robbery.

12  (P&A at 54-55.) Petitioner states that, pursuant to state law, "reasonable foreseeability is a

13  required element when the prosecution asks a jury to determine whether an aider and abettor is

14  vicariously liable for, i.e., guilty of, crimes beyond those originally planned/contemplated." (Id.

15  at 55.)

16          Respondent counters that the prosecution did not proceed on the theory that

17  petitioner was guilty as a co-conspirator or as an aider and abettor. Rather, according to

18  respondent, the prosecution theory was that petitioner and his co-defendant were guilty as

19  principals. In support of this contention, respondent quotes the following comments by the

20  prosecutor during his closing argument:

21          Let me – let me stop there for a second, too, on this aiding and
            abetting point, folks. It is not our position that Acuna and Galvan
22          were the aiders and the abetters. We are not asking you to find that
            these guys aided and abetted the real killers. These guys' guns
23          were used. These guys are the killers. They did the robbery. They
            used the guns. This is the People's position.

24

25  (RT at 635.)

26  /////

16

1          Petitioner's claim in this regard was raised for the first time in a petition for writ

2   of habeas corpus filed in the California Superior Court.  (Am. Answer, Ex. F.)  That court found

3   that the claim should have been, but was not, raised on appeal and was therefore barred under the

4   holding in In re Dixon, 41 Cal. 2d 756, 759 (1953).  (Am. Answer, Ex. G at 9.)  The Superior

5   Court also found that the claim was barred as untimely under the decision in In re Clark, 5 Cal.

6   4th 750 (1993).  (Id.)  Petitioner raised this claim again in a petition for writ of habeas corpus

7   filed in the California Court of Appeal.  (Am. Answer, Ex. H.)  That petition was summarily

8   denied.  (Am. Answer, Ex I.)  Petitioner then raised the claim in a petition for writ of habeas

9   corpus filed in the California Supreme Court.  (Am. Answer, Exs. J, K.)  That petition was

10  denied with a citation to In re Waltreus, 62 Cal. 2d 218, 225 (1965); In re Dixon, 41 Cal. 2d 756,

11  759 (1953); In re Swain, 34 Cal. 2d 300, 304 (1949); and People v. Duvall, 9 Cal. 4th 464, 474

12  (1995).  (Am. Answer, Ex. L.)

13         Because the California courts denied this jury instruction claim on procedural

14  grounds, there is no state court decision on the merits of this claim.  When it is clear that a state

15  court has not reached the merits of a petitioner's claim, the AEDPA's deferential standard does

16  not apply and a federal habeas court must review the claim de novo.  Menendez v. Terhune, 422

17  F.3d 1012, 1026 (9th Cir. 2005); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

18  Accordingly, this court will review de novo petitioner's claim that the trial court erred when it

19  failed to sua sponte give a jury instruction on the doctrine of reasonable foreseeability.

20         A review of the record reflects that, notwithstanding that portion of the closing

21  argument quoted by respondent, the prosecutor at petitioner's trial did argue that petitioner could

22  also be found guilty on a theory of aiding and abetting.  (RT at 635.)  In addition, petitioner's jury

23  was instructed on the definition of aiding and abetting.  (CT at 212-13, 219; RT at 621-22, 635.)[7]

24  /////

25  _____

26         [7]  The court notes that the jury was not instructed on the law relating to conspiracy.

As respondent points out, petitioner's jury found the special circumstance allegation that the murder was committed during the course of the robbery to be true.  (CT at 183.)  This finding required the jury to also find that petitioner was either the actual killer or an aider and abettor, and that he had the intent to kill.  (CT at 220-21; RT at 624.)[8]  In order to find that petitioner was an aider and abettor, the jury was required to find that petitioner aided, promoted, instigated, or encouraged the crime "with knowledge of the unlawful purpose of the perpetrator and with the intent or purpose of committing, encouraging, or facilitating the commission of the crime."  (RT at 621.)  The jury was also instructed that "mere knowledge that a crime is being committed and the failure to prevent it does not amount to aiding and abetting."  (Id. at 622.)  These instructions, read together, required the jury to find that petitioner either committed the murder himself or actually intended and aided the murder at the time it was committed.  See People v. Coffman, 34 Cal. 4th 1, 107-08 (2005) ("Moreover, by finding true the special circumstance allegations against Coffman, the jury in this case necessarily found she possessed the intent to kill."), cert. denied ___U.S.___, 125 S.Ct. 2517 (2005).  Under these circumstances, the omission of an instruction that the murder must have been reasonably foreseeable to petitioner at the time of the robbery did not render petitioner's trial fundamentally

---

[8]   In this regard, petitioner's jury was instructed in relevant part as follows with respect to the special circumstance alleging that the murder was committed during the commission of the robbery:

> If you find beyond a reasonable doubt that the defendant was either the actual killer or an aider and abetter, but you are unable to decide which, then you must also find beyond a reasonable doubt that the defendant with intent to kill aided and abetted an actor in commission of the murder in the first degree in order to find the special circumstance to be true.

> On the other hand, if you find beyond a reasonable doubt that the defendant was the actual killer, you need not find that the defendant intended to kill a human being in order to find the special circumstance to be true.

(CT at 220-21; RT at 624.)

1  unfair.  The jury clearly found, at a minimum, that the murder was reasonably foreseeable to

2  petitioner at the time it was committed because it found the special circumstance to be true.

3          Petitioner argues that the jury finding on the special circumstance does not end the

4  inquiry.  He contends that the jury might not have found the special circumstance allegation true

5  had it not been for the other constitutional violations at his trial.  Petitioner further argues that if

6  the jury had found the special circumstance not true, the prosecution would have had to

7  demonstrate

> whether [petitioner] was involved in any planning concerning the
> robbery/murder, and whether the homicide was reasonably
> foreseeable to [petitioner].  Since the prosecution presented no
> evidence of planning, it is, at a minimum, reasonably foreseeable
> that the jury would not have found [petitioner] guilty under a
> derivative liability theory had it not been for the trial court's
> instructional omission and the other constitutional errors discussed
> herein.

13  (P&A at 57.)

14         Petitioner's argument that the jury might have found the special circumstance

15  allegation not to be true is based on pure speculation.  After a review of the record, and for the

16  reasons described above, this court concludes that petitioner's trial was not rendered

17  fundamentally unfair because of the failure of the trial court to <u>sua</u> <u>sponte</u> give a reasonably

18  foreseeability instruction.  Accordingly, petitioner is not entitled to relief on this claim.

19              3.  <u>Instruction on Third Party Culpability</u>

20         Petitioner next claims that the trial court's failure to give a jury instruction on

21  "third party culpability" rendered his trial fundamentally unfair.  In support of this claim,

22  petitioner refers the court to his arguments on direct appeal.  (P&A at 60.)

23         The state court record reflects that petitioner requested the following jury

24  instruction on third party culpability:

> You have heard evidence that other persons were involved in this
> charged crime.  It is not required that the defendant prove this fact
> beyond a reasonable doubt.  Defendant is entitled to an acquittal if

19

the evidence raises a reasonable doubt in your minds as to the defendants' guilt.  Such evidence may by itself raise a reasonable doubt as to the defendants' guilt.  However, its weight and significance, if any, are matters for your determination.  If after consideration of this and all of the other evidence, you have a reasonable doubt that the defendant(s) committed [t]his offense, you must give the defendant(s) the benefit of the doubt and find him/them not guilty.

(CT at 239.)  The trial court refused to give this instruction without explanation.  (Id.)  Citing California caselaw, petitioner argued on direct appeal that "when third party culpability evidence has been admitted at trial, the defense has the right to an instruction pinpointing the theory and instructing the jury on how to relate the evidence of that defense to the prosecution's general burden of proving guilt beyond a reasonable doubt."  (Am. Answer, Ex. A at 31.)  Petitioner also argued that CALJIC 2.11.5, given at his trial and quoted below, undermined the value of his defense theory because "it contributed to the impression created by the trial court that [petitioner's] testimony was untrustworthy and should be disregarded."  (Id. at 32.)

After summarizing California law with respect to a defendant's right to a "pinpoint" jury instruction, the California Court of Appeal rejected petitioner's argument in this regard, reasoning as follows:

The jury was instructed in the language of CALJIC No. 2.11.5: "There has been some evidence in this case indicating that a person other than the defendants was or may have been involved in the crime for which the defendants are here on trial.  There may be many reasons why such person is not here on trial; therefore, do not discuss or give any consideration as to why the other person is not being prosecuted in this trial or whether he or she has been or will be prosecuted.  Your duty is to decide whether the People have proved the guilt of the defendants on trial."  Although defendant asserts the instruction "essentially undermined the legal value of [his] theory of the case," he acknowledges that the instruction has been approved because it "does not tell the jury it cannot consider evidence that someone else *committed* the crime."  (People v. Farmer (1989) 47 Cal.3d 888, 918-919, original italics.)  Defendant's proposed instruction was repetitious of instructions already given (CALJIC No. 2.11.5; CALJIC No. 2.90 [reasonable doubt instruction]) and the trial court properly refused it.  (Wright, supra, 45 Cal.3d at p. 1134.)

Assuming any error, it was harmless. (People v. Adrian (1982) 135 Cal.App.3d 335, 341-342.) The jury heard the evidence and the argument that an unnamed person or persons committed the crimes. The prosecution evidence established that three men ran out of the market. Even if the jury believed defendant that the two unnamed men committed the crimes, the jury could have found defendant was the third man who was seen running out of the market. Even if the jury believed defendant stayed in the car, he could still be convicted under an aiding and abetting theory for acting as a lookout.

(Opinion at 11-12.)

After a review of the record, the undersigned concludes that the lack of a pinpoint instruction did not prevent petitioner from presenting his theory of the defense nor did it otherwise render his trial fundamentally unfair. The substance of petitioner's proposed jury instruction was covered in other jury instructions given at his trial. Specifically, the jury was instructed that petitioner must be acquitted if there was a reasonable doubt about his guilt. (RT at 614, 621.) The jury was also reminded that there was evidence introduced suggesting that other persons may have been involved in the crime. (Id. at 616.) These instructions adequately permitted jury consideration of the defense case. In addition, petitioner testified in support of his defense that two other men committed the murder. The Annis brothers testified that petitioner was accompanied by at least two other persons, and maybe three. In short, the jury was aware that other persons may have committed the murder and was instructed that petitioner could not be found guilty if there was a reasonable doubt about his guilt. This was the essence of petitioner's proposed jury instruction. The jury simply rejected petitioner's version of the events, finding that both petitioner and his co-defendant personally used a firearm in the commission of both offenses. Under these circumstances, petitioner has failed to sustain his "heavy" burden of demonstrating that the omission of his requested "pinpoint" jury instruction resulted in a federal due process violation. Accordingly, he is not entitled to relief on this claim.[9]

_____

[9] Petitioner's argument, if any, that the lack of a pinpoint instruction violated California law is not cognizable in this federal habeas corpus proceeding. Middleton, 768 F.2d at 1085.

4.  <u>Instructions on Voluntary Intoxication</u>

Petitioner claims that the trial court erred in refusing to give two jury instructions regarding the effect of voluntary intoxication on specific intent.  (Am. Pet. at 8; P&A at 60.)  In this regard, petitioner again refers the court to the arguments he presented on direct appeal in state court.  (P&A at 60; Am. Pet., Ex. A at 35-40.)

Petitioner requested two jury instructions on the effects of voluntary intoxication on intent.  (RT at 610.)  First, petitioner refers this court the "standard" instruction which reads as follows:

> In the crimes of murder and robbery, of which the defendant Galvan is accused in Counts I and II, a necessary element is the existence in the mind of the defendant of the specific intent to permanently deprive a person of property in his possession taken from his immediate presence against his will by force or fear. [¶] If the evidence shows that the defendant was intoxicated at the time of the alleged crime, you should consider that fact in determining whether defendant had such specific intent. [¶] If from all the evidence you have a reasonable doubt whether the defendant formed such specific intent, you must find that he did not have such specific intent.

(<u>Id.</u>; Am. Answer, Ex. A at 35 n.6.)  On appeal, petitioner argued that he was entitled to this instruction "both to negate the specific intent for robbery and the specific intent to aid and abet."  (Am. Answer, Ex. A at 36.)

Petitioner's second proposed instruction stated as follows:

> You have heard evidence of intoxication of two individuals who were involved with the killing of the victim.  You may consider this state of intoxication as to their ability to formulate the specific intent to rob said victim.  You may further consider this state of intoxication as to any lesser degree of homicide in the event you fail to find a robbery has been committed beyond a reasonable doubt."

(CT at 238.)  Petitioner requested that this instruction be given "as to the [unnamed] perpetrators."  (RT at 610.)  The trial court refused to give both instructions on the grounds that there was no evidence except petitioner's testimony to indicate he was intoxicated at the time of

/////

the crimes, and that the defense of voluntary intoxication was inconsistent with petitioner's

defense of third party culpability.  (Am. Answer, Ex. A at 36; CT at 239; RT at 610.)

On appeal, petitioner argued that his trial testimony that he had been "drinking all

day" and that he called in sick to work because he was "a little buzzed" was sufficient to require

the trial court to give jury instructions on voluntary manslaughter, even though a defense based

on lack of intent was inconsistent with his defense of "non-participation."  (Am. Answer, Ex. A

at 37.)  Petitioner summed up his argument as follows:

> While the jury may have chosen to disbelieve appellant's testimony regarding third party liability, particularly in light of the court's treatment of the evidence as discussed *ante*, it may have considered his testimony regarding voluntary intoxication truthful.  Regardless of appellant's proffer of a third party culpability defense, the prosecution was required to prove beyond a reasonable doubt that he had the specific intent to commit robbery in order to obtain convictions for robbery and felony murder or to assist the actual perpetrators if the jury believed appellant's testimony.  Because the prosecution also presented the theory that appellant had specific intent to commit murder and the jury was so instructed, appellant was entitled, at his request, to instruct the jury that evidence of his voluntary intoxication may have prevented him from forming the requisite specific intent to commit those crimes.

(Id. at 39.)

The California Court of Appeal rejected these arguments on appeal based upon

the following reasoning:

> "The fact that a defendant has been drinking, without evidence that he became intoxicated thereby, provides no basis for an instruction on intoxication."  (citations omitted).
>
> Defendant testified that around noon, he and Acuna bought a 12-pack of beer which they shared with two other men.  They purchased another 12-pack of beer which was consumed by the four men.  Defendant decided he was "a little buzzed" from drinking and did not "feel like going to work."  The robbery/murder occurred at about 3:45 p.m.  Defendant was arrested at about 4:30 p.m.
>
> "[W]hen there is no evidence from which a jury could conclude that as a result of voluntary intoxication the defendant failed to from the requisite criminal intent or attain the requisite mental

1              state, instructions on the defense of voluntary intoxication may
properly be refused. [Citations.]"  (Williams, supra, 45 Cal.3d at p.

2              1311.)  That situation obtains here.  The trial court properly refused
defendant's requested instructions.

3

4 (Opinion at 13-14.)

5           Petitioner was charged with specific intent crimes.  Because voluntary

6 intoxication may be a defense to a specific intent crime, petitioner had a legal basis for seeking a

7 jury instruction on voluntary intoxication.  See United States v. Martinez-Martinez, 369 F.3d

8 1076, 1082 (9th Cir. 2004); United States v. Sneezer, 983 F.2d 920, 922 (9th Cir. 1992); see also

9 United States v. Gracidas-Ulibarry, 231 F.3d 1188, 1195 (9th Cir. 2001).  The United States

10 Supreme Court has held that "[a]s a general proposition, a defendant is entitled to an instruction

11 as to any recognized defense for which there exists evidence sufficient for a reasonable jury to

12 find in his favor."  Mathews v. United States, 485 U.S. 58, 63 (1988).  See also United States v.

13 Escobar de Bright, 742 F.2d 1196, 1198 (9th Cir. 1984) ("The general principle is well

14 established that a criminal defendant is entitled to have a jury instruction on any defense which

15 provides a legal defense to the charge against him and which has some foundation in the

16 evidence, even though the evidence may be weak, insufficient, inconsistent, or of doubtful

17 credibility.")  This same standard applies to habeas petitions arising from state convictions.

18 Bradley v. Duncan, 315 F.3d 1091, 1097 (9th Cir. 2002); Conde v. Henry, 198 F.3d 734, 739 (9th

19 Cir. 1999) ("It is well established that a criminal defendant is entitled to adequate instructions on

20 the defense theory of the case.").  A due process deprivation warranting habeas relief occurs

21 when the failure to give an instruction precludes the jury from considering a viable theory of

22 defense (see Bashor v. Risley, 730 F.2d 1228, 1240 (9th Cir. 1984), or if the evidence warrants

23 such an instruction under state law (see Miller v. Stagner, 757 F.2d 988, 993 (9th Cir. 1985).  Of

24 course, a requested instruction on voluntary intoxication is properly denied where there is

25 insufficient foundation in the evidence to show that a defendant's alcohol use made it impossible

26 to form the requisite intent.  United States v. Washington, 819 F.2d 221, 225 (9th Cir. 1987)

1   (requested jury instruction on voluntary instruction properly denied where slight evidence of

2   alcohol consumption did not support defendant's lack of intent and intoxication defenses); see

3   also United States v. Nacotee, 159 F.3d 1073, 1076-77 (7th Cir. 1998) (same); Sanders v. Jones,

4   1994 WL 118260, * 3 (N.D. Cal. March 11, 1994) (trial court properly found that petitioner did

5   not present sufficient evidence to support a voluntary intoxication instruction where he presented

6   no evidence of how much he had consumed over what period of time, failed to call an expert

7   witness on the issue and seemed to recall the events of the incident in his trial testimony ).  Thus,

8   in order to be entitled to a jury instruction on voluntary intoxication a criminal defendant must

9   present evidence:  (1) that he was intoxicated, and (2) that his intoxication precluded him from

10  forming the specific intent necessary to commit the crime in question.  Washington, 819 F.2d at

11  225.

12          Here, petitioner presented "some evidence" of his consumption of alcohol on the

13  day of the shooting through his own trial testimony.  However, petitioner's testimony did not

14  suggest that his use of alcohol precluded him from forming the specific intent necessary to

15  commit the crimes of robbery or of being an aider and abettor to a murder.  Petitioner presented

16  no evidence regarding how much alcohol he consumed over any specified period of time, nor did

17  he call an expert to testify regarding the effect of alcohol consumption on his ability to form

18  malice.  Without such evidentiary support in the record, the trial court was not required to give a

19  voluntary intoxication instruction.  The opinion of the state appellate court to the same effect is

20  not contrary to or an unreasonable application of federal law.  Nor has petitioner established that

21  the failure to give a voluntary intoxication instruction so infected his trial that the resulting

22  conviction violated due process.  Accordingly, petitioner is not entitled to relief on this claim.

23          C.  Judicial Bias

24          Petitioner's next claim is that his due process right to a fair trial was violated

25  because the trial judge was biased against him and sabotaged the presentation of his defense.

26  Specifically, petitioner alleges that the trial judge, in the presence of the jury, belittled

petitioner's testimony and the testimony of Anthony Esquivel; had "little patience" for

petitioner's defense of third party culpability; and improperly refused to grant a continuance for

the purpose of allowing the defense to secure the testimony of expert witness Smith.  (P&A at

59.)  Petitioner also argues that the trial judge's mannerisms, body language, and expressions

"betrayed the judge's lack of belief in and patience for [petitioner's] defense."  (Id. at 59-60.)

Finally, petitioner contends that the circumstances surrounding the denial of his state habeas

petition in the California Superior Court raise "questions concerning the trial judge's partiality."

(Id. at 60.)

Petitioner has filed his own declaration in support of his claim of judicial bias.

(Am. Pet., Ex. Q.)  Therein, petitioner declares that during trial, and especially during his own

testimony and the testimony of Anthony Esquivel, the trial judge often had "exasperated

expressions on his face," which included exhibiting a red face and displaying his anger.  (Id.)

Petitioner also declares that the judge's body language indicated he was uncomfortable with

petitioner's testimony and did not believe it.  (Id.)

"The Due Process Clause entitles a person to an impartial and disinterested

tribunal."  Marshall v. Jerrico, Inc., 446 U.S. 238, 243 (1980).  In addition, "justice must satisfy

the appearance of justice."  Offutt v. United States, 348 U.S. 11, 14 (1954).  As stated by the

United States Supreme Court:

> A fair trial in a fair tribunal is a basic requirement of due process.
> Fairness of course requires an absence of actual bias in the trial of
> cases.  But our system of law has always endeavored to prevent
> even the probability of unfairness.  To this end no man can be a
> judge in his own case and no man is permitted to try cases where
> he has an interest in the outcome.

In re Murchison, 349 U.S. 133, 136 (1955).  See also Taylor v. Hayes, 418 U.S. 488 (1974).  A

trial judge "must be ever mindful of the sensitive role [the court] plays in a jury trial and avoid

even the appearance of advocacy or partiality."  Kennedy v. Los Angeles Police Dep't, 901 F.2d

/////

702, 709 (9th Cir. 1989), <u>overruled on other grounds by</u> <u>Hunter v. Bryant</u>, 502 U.S. 224 (1991)

(quoting <u>United States v. Harris</u>, 501 F.2d 1, 10 (9th Cir. 1974)).

        To sustain a claim of judicial bias, "there must be an 'extremely high level of

interference' by the trial judge that creates 'a pervasive climate of partiality and unfairness.'"

<u>Duckett v. Godinez</u>, 67 F.3d 734, 740 (9th Cir. 1995) (quoting <u>United States v. DeLuca</u>, 692 F.2d

1277, 1282 (9th Cir. 1982)).  <u>See also</u> <u>In re Murchison</u>, 349 U.S. at 136 (judicial bias resulted in

a denial of due process where the same judge who had sat as the 'grand jury' before which

witnesses had testified also presided at a contempt hearing at which those witnesses were

adjudged in contempt for their previous conduct before the judge); <u>Tumey v. Ohio</u>, 273 U.S. 510,

523 (1927) (violation of due process where judge had a direct personal pecuniary interest in

convicting the defendant who came before him for trial).  However, in attempting to make out a

claim of unconstitutional bias, a plaintiff must "overcome a presumption of honesty and

integrity" on the part of decision-makers.  <u>Withrow v. Larkin</u>, 421 U.S. 35, 47 (1975).  Finally, if

a criminal defendant is tried by an impartial adjudicator, reversal is required without

consideration of whether the error was  harmless.  <u>Neder v. United States</u>, 527 U.S. 1, 8 (1999);

<u>Gomez v. United States</u>, 490 U.S. 858, 876 (1989) (denial of "right to an impartial adjudicator,

be it judge or jury" can never be harmless error) (citation omitted).

        A review of the record does not support petitioner's claim that the trial judge's

rulings reflected any personal bias or animosity towards petitioner, his counsel, or petitioner's

defense to the charges against him.  As discussed above, the judge's decision not to grant a

continuance for the purpose of determining whether Mr. Smith was qualified to testify as an

expert regarding petitioner's fear of retribution, was based in large part on the fact that two other

witnesses had testified to essentially the same effect.  There is no evidence that the trial judge's

ruling was based on any personal animosity towards petitioner or his defense.  Moreover, as

discussed above, the trial judge's rulings on jury instruction issues did not violate petitioner's

right to a fair trial.

1        Petitioner also questions the circumstances under which his petition for writ of

2   habeas corpus filed in the California Superior Court was addressed.  The state court record

3   reflects that on June 8, 1999, petitioner's habeas petition was transferred for decision to

4   Honorable John V. Stroud, petitioner's trial judge, after originally having been assigned to

5   another judge.  (Am. Pet., Ex. J.)  On June 9, Judge Stroud issued a nine-page opinion rejecting

6   petitioner's claims.  (Am. Answer, Ex. G.)  On June 16, 1999, petitioner filed an application

7   seeking disqualification of Judge Stroud from acting as the judge in the habeas proceeding on the

8   grounds that the petition challenged the judge's trial rulings and his bias and impartiality.  (Am.

9   Pet., Ex. K.)  On June 23, 1999, Judge Stroud issued an order striking petitioner's application to

10  disqualify as untimely, pursuant to Cal. Code Civ. Proc. § 170.4(b) ("if a statement of

11  disqualification is untimely filed . . . the trial judge against whom it was filed may order it

12  stricken").

13       Petitioner argues that the orders denying his state habeas petition and striking the

14  application to disqualify were erroneous and "contrary to law."  (P&A at 14-22.)  Other than this

15  argument, petitioner does not elaborate on his contention that these events provide support for his

16  argument that Judge Stroud was an impartial adjudicator at his trial.   Petitioner relies on the

17  decision in Tumey v. Ohio in support of his claim of judicial bias.  However, the circumstances

18  in petitioner's case are not all similar to those confronted by the Supreme Court in Tumey where

19  the trial judge was found to have a pecuniary interest in convicting defendant of the charged

20  crimes.  273 U.S. at 523 ("[I]t certainly violates the Fourteenth Amendment and deprives a

21  defendant in a criminal case of due process of law to subject his liberty or property to the

22  judgment of a court, the judge of which has a direct, personal, substantial pecuniary interest in

23  reaching a conclusion against him in his case.")

24       After a review of the relevant documents, this court does not find support for

25  petitioner's claim of judicial bias in the circumstances surrounding the denial of his petition for

26  writ of habeas corpus by the California Superior Court.  The Superior Court's denial of the

1   habeas petition was affirmed by both the California Court of Appeal and the California Supreme

2   Court.  There is no indication that the referral of the state habeas petition to the trial judge was

3   improper in any way.  Further, the motion for disqualification was moot at the time it was filed

4   because a decision on the habeas petition had already been issued.  Under the circumstances,

5   there appears to be no violation of federal law in the state court's handling of petitioner's petition

6   for writ of habeas corpus.

7        In sum, petitioner's argument that the trial judge's actions were motivated by

8   personal antagonism is not supported by the record.  Even if, as alleged by petitioner, the judge

9   appeared exasperated at times during trial with the testimony of some witnesses, a review of the

10  record does not reflect conduct that was so extreme as to create a pervasive climate of unfairness.

11  Accordingly, petitioner is not entitled to relief on this claim.

12        D. Ineffective Assistance of Counsel

13        Petitioner raises two claims of ineffective assistance of counsel.  His first such

14  claim is that his defense counsel effectively abandoned him, resulting in a constructive denial of

15  his Sixth Amendment right to counsel.  His second claim is that his trial counsel has engaged in a

16  pattern and practice of providing his clients in criminal cases with constitutionally inadequate

17  representation and that he provided petitioner with prejudicially ineffective assistance of counsel

18  at his trial.  Petitioner also alleges that his appellate counsel rendered ineffective assistance in

19  failing to challenge on appeal the trial court's failure to give a reasonable foreseeability jury

20  instructions.  After setting forth the applicable legal principles, the court will analyze these

21  claims in turn below.

22        1. Legal Standards

23        The Sixth Amendment guarantees the effective assistance of counsel.  The United

24  States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in

25  Strickland v. Washington, 466 U.S. 668 (1984).  To support a claim of ineffective assistance of

26  counsel, a petitioner must first show that, considering all the circumstances, counsel's

29

performance fell below an objective standard of reasonableness.  See Strickland, 466 U.S. at 687-88.  After a petitioner identifies the acts or omissions that are alleged not to have been the result of reasonable professional judgment, the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally, competent assistance.  Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003).

Second, a petitioner must establish that he was prejudiced by counsel's deficient performance.  Strickland, 466 U.S. at 693-94.  Generally, a petitioner must demonstrate actual prejudice, or a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.  See also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000).  This showing of prejudice is required in cases involving claims of ineffective assistance of counsel both at trial or on appeal.  Id. at 693. A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."  Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

In assessing an ineffective assistance of counsel claim "[t]here is a strong presumption that counsel's performance falls within the 'wide range of professional assistance.'" Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (quoting Strickland, 466 U.S. at 689).  There is in addition a strong presumption that counsel "exercised acceptable professional judgment in all significant decisions made."  Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).  However, that deference "is predicated on counsel's performance of sufficient investigation and preparation to make reasonably informed, reasonably sound judgments."  Mayfield v. Woodford, 270 F.3d 915, 927 (9th Cir. 2001) (en banc)).

/////

Defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. "This includes a duty to . . . investigate and introduce into evidence records that demonstrate factual innocence, or that raise sufficient doubt on that question to undermine confidence in the verdict." Bragg v. Galaza, 242 F.3d 1082, 1088 (9th Cir. 2001) (citing Hart v. Gomez, 174 F.3d 1067, 1070 (9th Cir. 1999)). Counsel must, "at a minimum, conduct a reasonable investigation enabling him to make informed decisions about how best to represent his client." Hendricks v. Calderon, 70 F.3d 1032, 1036 (9th Cir. 1995) (quoting Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994); internal citation and quotations omitted). On the other hand, where an attorney has consciously decided not to conduct further investigation because of reasonable tactical evaluations, his or her performance is not constitutionally deficient. See Siripongs v. Calderon, 133 F.3d 732, 734 (9th Cir. 1998); see also Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir. 1998). "A decision not to investigate thus 'must be directly assessed for reasonableness in all the circumstances.'" Wiggins, 539 U.S. at 533 (quoting Strickland, 466 U.S. at 691).

The Strickland standards apply to appellate counsel as well as trial counsel. Smith v. Robbins, 528 U.S. 259, 285 (2000); Smith v. Murray, 477 U.S. 527, 535-36 (1986); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989). However, an indigent defendant "does not have a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." Jones v. Barnes, 463 U.S. 745, 751 (1983). Counsel "must be allowed to decide what issues are to be pressed." Id. Otherwise, the ability of counsel to present the client's case in accord with counsel's professional evaluation would be "seriously undermined." Id. See also Smith v. Stewart, 140 F.3d 1263, 1274 n.4 (9th Cir. 1998) (counsel not required to file "kitchen-sink briefs" because it "is not necessary, and is not even particularly good appellate advocacy.") Further, there is, of course, no obligation to raise meritless arguments on a client's behalf. See

31

1    Strickland, 466 U.S. at 687-88 (requiring a showing of deficient performance as well as

2    prejudice).  Thus, counsel is not deficient for failing to raise a weak issue.  See Miller, 882 F.2d

3    at 1434.  In order to demonstrate prejudice with respect to a claim of ineffective assistance by

4    appellate counsel, petitioner must demonstrate that but for counsel's errors he probably would

5    have prevailed on appeal.  Miller, 882 F.2d at 1434 n.9.

6         2.  Trial Counsel

7              a.  Constructive Denial of Right to Counsel

8         Citing United States v. Cronic, 466 U.S. 648, 658 (1984), petitioner claims that

9    his trial counsel "effectively abandoned" him during pre-trial proceedings and trial, thereby

10   denying him his Sixth Amendment right to the assistance of counsel.  (P&A at 4.)  Specifically,

11   petitioner alleges that his trial counsel: (1) had no communication with petitioner for thirteen of

12   the sixteen months that he represented petitioner; (2) devoted only 1.5 hours to trial preparation;

13   (3) did not file any pre-trial motions; (4) did not conduct any "meaningful" investigation; (5) did

14   not incur any expenses on petitioner's behalf; (6) failed to review "pertinent discovery;" and (7)

15   claimed to have lost his trial file after the conclusion of the case.  (Id. at 5.)  Petitioner also

16   contends that his trial counsel did not have any out-of-court discussions with the prosecutor or

17   the attorney for co-defendant Acuna and did not interview any witnesses.  Petitioner notes that at

18   a pre-sentencing hearing on his motion to relieve his trial counsel, counsel conceded that because

19   he was working on several trials, he "didn't have a lot of time to spend with [petitioner] leading

20   up to the pretrial stuff."  (Id. at 6.)  Petitioner argues that, because of trial counsel's failure to

21   expend any significant effort on his behalf, he was "actually or constructively denied his right to

22   counsel."  (Id. at 26.)  He asserts that prejudice may be presumed under such circumstances.

23        This claim was raised for the first time in petitioner's petition for a writ of habeas

24   corpus filed with the California Supreme Court.  (Am. Answer, Ex. K.)  The petition was denied

25   with citation to In re Waltreus, 62 Cal. 2d 218, 225 (1965); In re Dixon, 41 Cal. 2d 756, 759

26   (1953); In re Swain, 34 Cal. 2d 300, 304 (1949); and People v. Duvall, 9 Cal. 4th 464, 474

(1995).  (Am. Answer, Ex. L.)  Because the California courts denied petitioner's claim of a

constructive denial of counsel on procedural grounds, there is no state court decision on the

merits of this claim.  Accordingly, this court will review de novo petitioner's claim of

constructive denial of counsel.  Menendez v. Terhune, 422 F.3d at 1026; Nulph, 333 F.3d at

1056.

           In Cronic the United States Supreme Court "acknowledged that certain

circumstances are so egregiously prejudicial that ineffective assistance of counsel will be

presumed."  Stano v. Dugger, 921 F.2d 1125, 1152 (11th Cir. 1991) (en banc) (citing Cronic, 466

U.S. at 658).  These circumstances are limited, however, to situations where  "counsel entirely

fails to subject the prosecution's case to meaningful adversarial testing," thereby rendering the

adversary process itself presumptively unreliable.  Pizzuto v. Arave, 280 F.3d 949, 958 (9th Cir.

2002) (quoting Cronic, 466 U.S. at 659).  See also Young v. Runnels, 435 F.3d 1038, 1042 (9th

Cir. 2006).  In making this determination, the totality of counsel's efforts must be examined, "not

just part of them in isolation."  Gerlaugh v. Stewart, 129 F.3d 1027, 1036 (9th Cir. 1977).  See

also Bell v. Cone, 535 U.S. 685, 697 (2002) (emphasizing that Cronic's exception for failing to

test the prosecution's case applies when the attorney's failure to oppose the prosecution goes to

the proceeding as a whole--not when the failure occurs only at specific points in the trial); Florida

v. Nixon, 543 U.S. 175, 188 (2004) (counsel's guilt phase concession of guilt did not

automatically constitute deficient performance since petitioner still had the rights to which he

was entitled at trial--to have the prosecution prove the elements of the offense beyond a

reasonable doubt by competent, admissible evidence; to cross-examine witnesses; to exclude

prejudicial evidence; and to appeal evidentiary or instructional errors); United States v. Thomas,

417 F.3d 1053, 1057-58 (9th Cir. 2005) (defense counsel's concession of defendant's guilt on one

charge in order to enhance defendant's credibility while attempting to avoid conviction on other

charges did not rise to level of an entire failure to subject prosecution's case to meaningful

/////

1    adversarial testing, such that counsel's performance, assuming that it was deficient, was

2    presumptively prejudicial).

3             After a review of the entire record, including the record of the evidentiary hearing

4    held in this court, the undersigned concludes that petitioner has failed to substantiate his claim

5    that he suffered a constructive denial of his right to counsel.  While trial counsel's performance

6    may be subject to question in certain specific respects, it did not approach the level of a complete

7    failure of counsel to provide representation as would be required to justify a finding of presumed

8    prejudice.  See, e.g., Cronic, 466 U.S. at 660-61 & n.28 (prejudice presumed where counsel

9    actively represents conflicting interests or where "circumstances made it so unlikely that any

10   lawyer could provide effective assistance"); Strickland, 466 U.S. at 692 (prejudice presumed

11   where state interferes with counsel's assistance); Plumlee v. Ignacio, 426 F.3d 1095 (9th Cir.

12   2005) (prejudice presumed where level of mistrust between defendant and his attorney was so

13   extreme that defendant was deprived of "any representation at all"); Delgado v. Lewis, 223 F.3d

14   976, 980 (9th Cir. 2000) (the "Sixth Amendment right to counsel, of course, guarantees more

15   than just a warm body to stand next to the accused during critical stages of the proceedings"

16   (quoting United States ex rel. Thomas v. O'Leary, 856 F.2d 1011, 1015 (9th Cir. 1988)); Frazer

17   v. United States, 18 F.3d 778, 785 (9th Cir. 1994) (if trial counsel verbally assaulted his client

18   with a racial epithet and threatened to perform ineffectively if client insisted on proceeding to

19   trial, prejudice would be presumed because the alleged statements would be too extortionate to

20   qualify as the assistance of counsel); Tucker v. Day, 969 F.2d 155, 159 (5th Cir. 1992) (attorney

21   merely "stood in" during sentencing); United States v. Swanson, 943 F.2d 1070 (9th Cir. 1991)

22   (in closing argument, counsel conceded there was no reasonable doubt as to his client's guilt);

23   Javor v. United States, 724 F.2d 831, 834-35 (9th Cir. 1984) (attorney slept through a portion of

24   the trial); Osborne v. Shillinger, 861 F.2d 612, 629 (10th Cir. 1988) (attorney "acted with

25   reckless disregard for his client's best interest and, at times, apparently with the intention to

26   weaken his client's case").

1    Here, petitioner's trial counsel actively represented petitioner from the time he

2  was first appointed through sentencing. The record reflects that counsel met with petitioner

3  several times to discuss his case, hired an investigator, drafted motions, conducted adequate

4  direct and cross-examination of witnesses, presented a defense based on petitioner's version of

5  the events, and adequately argued the defense case in his closing argument to the jury. Although

6  trial counsel may not have met with petitioner in the jail for thirteen of the sixteen months he

7  represented petitioner, he explained at the evidentiary hearing on petitioner's motion to relieve

8  counsel that his investigator spoke to petitioner numerous times during that same period, and that

9  counsel met with petitioner during breaks at court appearances and the trial. (Reporter's

10  Transcript of Evidentiary Hearing, at 23-24, 34-35, 37, 39-40, 91-100.)

11    While petitioner generally faults his trial counsel for failing to devote sufficient

12  hours to trial preparation, the record reflects that counsel was adequately prepared for trial.

13  Further, although counsel did not file any pretrial motions, he explained at the evidentiary

14  hearing that a motion he drafted to preclude the striking of petitioner's testimony was rendered

15  moot by the prosecutor's decision not to request that the testimony be stricken. (Id. at 103.)[10]

16  Counsel testified that after receiving a lab analysis report indicating that petitioner's blood

17  alcohol level was only .06%, he realized that a defense based on petitioner's level of intoxication

18  as not particularly viable. (Id. at 120.) Moreover, contrary to petitioner's claim that his trial

19  counsel did not have any pre-trial discussions with the prosecutor, the transcript of the

20  preliminary hearing reflects that counsel spoke with the prosecutor about the case "on a number

21  of occasions." (Id. at 108.) Trial counsel testified that he reviewed potential jury instructions,

22  requested certain specific instructions, and made notes during jury voir dire. (Id. at 109-113.)

23  Petitioner's trial counsel also testified that he visited the scene of the crime with his investigator,

24

25    [10]   The record reflects that petitioner's trial counsel also prepared and filed two post-trial
26  motions. (CT 241-49; 262-64; 265-69; RT 103-05.) Those motions, a motion for a new trial and
   a motion for release of juror information, were both denied. (CT 7; RT 103-05.)

1 considered the facts of the case and petitioner's version of what had occurred, and presented the

2 best defense he could under the circumstances.  (Id. at 19-24, 31-33, 66-67.)  Counsel explained

3 that it was customary to have no contact with his client from the time of the verdict until the day

4 before sentencing because he "wait[ed] until we get the probation report, then we interview them

5 with the probation report and the recommendations, then we go into – at that time if we need

6 time for new trial motion or whatever we ask for time at that point."  (Id. at 51.)

7        A careful review of the record reflects that petitioner's trial counsel "subject[ed]

8 the prosecution's case to meaningful adversarial testing" by virtue of his efforts on petitioner's

9 behalf.  See Cronic, 466 U.S. at 659.  Accordingly, petitioner is not entitled to relief on his claim

10 that he was constructively denied his Sixth Amendment right to counsel.

11                b. Pattern and Practice/Ineffective Assistance of Counsel at Trial

12        In his next claim of ineffective assistance of trial counsel, petitioner alleges that

13 his trial attorney engaged in a "pattern and practice" of providing ineffective assistance to his

14 clients facing criminal charges and that, consistent with that practice, he provided ineffective

15 assistance to petitioner.  With respect to counsel's performance during trial, petitioner

16 specifically claims that his trial counsel improperly: (1) failed to spend sufficient time with

17 petitioner prior to trial; (2) failed to obtain the testimony of a witness who saw petitioner with the

18 two actual perpetrators of the homicide immediately prior to the shooting; (3) failed to issue a

19 subpoena to witness Lee Smith; (4) failed to present evidence concerning the weaknesses in the

20 eyewitness identifications of petitioner by two prosecution witnesses; (5) failed to present

21 evidence of petitioner's intoxication at the time of his arrest which would have explained his

22 conduct; (6) failed to review a damaging videotape depicting petitioner's post-arrest interview

23 with the police and failed to mention the tape to petitioner at any time prior to trial; and (7) failed

24 to adequately cross-examine prosecution witnesses Allen and Christopher Annis.  (Am. Pet. at 7;

25 P&A at 8.)  Petitioner explains that "for organizational purposes, trial counsel's deficiencies can

26 be categorized as {A} a failure to adequately investigate and prepare for trial, {B} a failure to

36

1  perform competently during trial, {C} a failure to perform competently in proceedings in the trial

2  court after the jury rendered its verdicts, and {D} trial counsel's pattern and practice of deficient

3  representation – a pattern and practice which was manifest throughout the course of counsel's

4  representation of [petitioner]."  (P&A at 32.)  Petitioner specifies trial counsel's failures in more

5  detail as set forth below.

6                    i. <u>Failure to Adequately Investigate and Prepare</u>

7                 Petitioner contends that his trial counsel failed to investigate and prepare for trial

8  in that he: (1) visited petitioner only five times between the time of his arrest and his trial

9  seventeen months later; (2) failed to find and investigate a gas station attendant who saw

10  petitioner, Acuna, and two other persons in a dark vehicle when they purchased gasoline shortly

11  before the homicide; (3) failed to find and investigate a young girl who saw "four or five"

12  Hispanic males in a vehicle and directed them to the gas station where the homicide took place;

13  (4) failed to interview petitioner's supervisor at work, who would have substantiated petitioner's

14  assertion that the $50 found on his person at the time of his arrest came from his paycheck,

15  issued two days earlier; (5) failed to investigate "cash receipts at the D Gas Station on the date in

16  question;" and (6) failed to inform petitioner of the existence of the videotaped interview during

17  which petitioner made "profane remarks and gestures," which was played by the prosecution

18  during its rebuttal case.  (<u>Id.</u> at 33-36.)

19                 In support of these claims, petitioner has filed the declaration of his habeas

20  investigator, who states that she had a telephone conversation with Joshua Powell, an employee

21  of the Chevron gas station in Walnut Grove, California on the day of the killing.  Mr. Powell told

22  the habeas investigator that he had informed a previous investigator in 1995 that four Hispanic

23  men came into his gas station on the day of the killing and that he believed these four individuals

24  were involved in the homicide in this case.  (Am. Pet., Ex. D.)  Petitioner has also filed his own

25  declaration, in which he states that he informed his trial counsel of the existence of Mr. Powell,

26  but that counsel made no effort to find him.  (Am. Pet., Ex. Q.)  Finally, petitioner has filed the

1   declaration of Melody Owens, who was eleven years old at the time of the crime.  (Am. Pet., Ex.

2   E.)  Ms. Owens declares that she saw a car containing four or five Hispanic males in Courtland,

3   California on the day of the homicide and that the driver asked her for the location of a gas

4   station.  (Id.)  Petitioner argues that if his trial counsel had conducted sufficient investigation to

5   obtain the above-described evidence for presentation at trial, it would have corroborated his

6   testimony that two other persons committed the crime.

7               ii.  Failure to Perform Competently at Trial

8               Petitioner contends that his counsel rendered ineffective assistance at trial when

9   he: (1) failed to subpoena witness Lee Smith, thereby assuring that his request for a continuance

10  of the trial to obtain this witness would be denied; (2) failed to "appropriately challenge"

11  inconsistencies in the testimony of the Annis brothers; (3) failed to present evidence with respect

12  to the suspect nature of cross-cultural eyewitness identifications; (4) failed to object when the

13  trial court cut off his questioning of Allen Annis; and (5) failed to introduce evidence with

14  respect to petitioner's intoxication on the night of the crime.  (P&A at 36-38.)  Petitioner

15  contends that "had [counsel] delivered Lee Smith's testimony by having him under subpoena,

16  and had [counsel] adequately challenged the Annis brothers' identification of Galvan, it is quite

17  likely that the jury would not have convicted [petitioner] of murder."  (Id. at 45.)

18              iii.  Failure to Perform Competently "Post-Verdict"

19              Petitioner argues that his trial counsel rendered ineffective assistance after the

20  verdict but before sentencing when he: (1) failed to visit petitioner; and (2) failed to turn over his

21  trial file.  (Id. at 38.)

22              iv.  State Court Opinion

23              As described above, in May of 1999, petitioner filed a petition for writ of habeas

24  corpus in the Sacramento County Superior Court.  (Am. Answer, Ex. F.)  Therein, he set forth a

25  factual basis for each of the ineffective assistance of counsel arguments raised in this claim

26  except with respect to his pattern-and-practice argument.  (Id.)  The Superior Court denied the

petition in a reasoned opinion which concluded that most of petitioner's claims were barred on

procedural grounds and that petitioner had failed to make a prima facie showing in support of any

claim.  (Am. Answer, Ex. G.)  Accordingly, that opinion provides the basis for the state court

judgment with respect to petitioner's <u>Strickland</u> claim, with the exception of his pattern-and-

practice allegation.  <u>Avila v. Galaza</u>, 297 F.3d 911, 918 (9th Cir. 2002).  The Superior Court

rejected petitioner's arguments in this regard on the merits, stating:

> In any event, even without the procedural bars, petitioner does not
> state a prima facie case on any of his ineffective assistance of
> counsel allegations.  To prevail on an ineffective assistance of
> counsel claim, a petitioner must show not only that his counsel's
> performance was deficient, but that absent the deficiency it is
> reasonably probable that the result would have been different
> (<u>Strickland v. Washington</u> (1984) 466 U.S. 668).  He does not meet
> this standard.
>
> Petitioner first alleges that trial counsel had extremely limited
> contact with petitioner, visiting him only five times from time of
> arrest until commencement of the jury trial.  Petitioner claims that
> as a result, trial counsel did not develop an adequate understanding
> of many pertinent aspects of the case.
>
> He claims that neither his trial counsel nor his investigator tracked
> down "a potentially critical" witness who, "just moments before
> the homicide," saw petitioner and Acuna with the "two actual
> perpetrators" of the homicide.  This witness allegedly worked as a
> clerk at a gas station in Walnut Grove, and that petitioner, Acuna,
> and "the two perpetrators" were at the gas station "just minutes"
> before the homicide.  The clerk "would have remembered" that all
> four of them were intoxicated.  If this had been established,
> petitioner claims that the prosecutor would not have been able to
> argue that that [sic] petitioner's story on the stand was not
> believable.  In support, petitioner attaches his own declaration,
> stating that he advised his counsel and the investigator that "just
> five to ten minutes" before "the four of us" arrived at the crime
> scene, they had stopped at a gas station in Walnut Grove, and that a
> male clerk at the gas station assisted them.  Petitioner claims in his
> declaration, "I know we made an impression on him and that he
> would recall that there were four of us."  Petitioner, however, does
> not submit any declaration by the gas station attendant himself.
> His speculation that the attendant would have recalled the four of
> them is not proper documentation of this claim (<u>Harris, supra</u>).
>
> In any event, even if petitioner could now find the gas station
> attendant and obtain a proper declaration from him, and even if that
> had been before the jury at trial, it would not have made any

difference in the verdict.  Christopher Annis gave credible testimony at trial that he saw three persons run out of the market, one of whom he positively identified both in a photo lineup and at trial itself as being petitioner.  He also testified during cross-examination that he could not see in the back seat of the car, leaving open the possibility that there was a fourth person in the back seat.  Thus, even if petitioner were now to be believed, that a gas station attendant saw petitioner, Acuna, and two others in the car just minutes before the murder, it would not be inconsistent with Annis's testimony that three persons, including petitioner, came out of the market after the shooting, carrying guns.  Rather, it is still possible, under Annis's testimony, that a fourth person was in the back seat of the car.  It is also still possible that at some point between the gas station and the market, a fourth person got out of the car.  The gas station attendant, therefore, would have added nothing to change the outcome of the trial.  The jury still would have believed Annis's testimony that three persons, including petitioner, came out of the market.

Petitioner also alleges that he told his trial counsel and the investigator that the $50 he had on him at the time of his arrest 45 minutes after the crime came from a paycheck he had received just two days previously from his work at America Live.  Petitioner claims that this could have been verified by his supervisor, Norma Jean O'Connell.  However, petitioner attaches no declaration by O'Connell attesting to this (Harris, supra).  In any event, again there is no showing of prejudice.  Even if this had been presented to the jury, the jurors could reasonably have believed that petitioner no longer had the $50 from his job, two days having passed since he had allegedly been paid, and instead believed that petitioner and Acuna had taken $100 from the market and had split the proceeds, he getting $50 and Acuna getting $50.  Even if the jury was not sure about the source of petitioner's $50, petitioner's claim does not explain the $50 found on Acuna, or Christopher Annis's credible testimony that he saw petitioner and two others run out of the market with guns immediately after the clerk inside had been shot.  Therefore, even if petitioner had presented credible documentation of his claim regarding the $50, presentation of that evidence at trial would not have made a difference in the outcome of the trial.

Petitioner next alleges that after petitioner testified at trial, the prosecution, in rebuttal, played for the jury a videotape of petitioner in custody at the sheriff's department shortly after arrest, and that petitioner had not been told by his trial counsel before he testified that such a videotape even existed.  Petitioner claims that the videotape showed petitioner intoxicated and making profane remarks and gestures, and petitioner making statements inconsistent with his trial testimony.  Petitioner claims that his counsel should have gone over the videotape with petitioner before he testified.  Petitioner, however, does not set forth how his

testimony would have been different, had he seen the videotape before he testified, and whether his story on the witness stand would have changed, let alone whether he would have testified any differently so as to refute Christopher Annis's testimony. Nor does he claim that he would not have decided to testify had he seen the videotape beforehand. Therefore, petitioner fails to show how the outcome of the trial would have been different, had he seen the videotape before he testified.

Petitioner next alleges that his trial counsel was ineffective in failing to subpoena Officer Smith to testify. As noted in the Third District Court of Appeal opinion affirming the judgment in this case, however, even if it were error for the trial court to have denied a continuance so that Officer Smith could have testified, it would have made no difference in the outcome of the trial. Christopher Annis testified that three persons, including petitioner, came running out of the market with guns, which is not inconsistent with petitioner's testimony that there were four of them, including the two unnamed persons, as the fourth person could have been in the back seat of the car and just not seen by Annis. Further, both petitioner and Esquivel had already testified about the consequences of a gang member "snitching' on another, and at most Smith's testimony would have been cumulative.

Petitioner next claims that trial counsel was ineffective for failing to present the jury with expert testimony concerning the fallibility of cross-ethnic eyewitness identification under rapid and exciting circumstances. Petitioner, however, presents no declaration from an expert on cross-racial identification, on what would have been presented to the jury had it been offered (Harris, supra). Nor is there any showing that had this been offered into evidence, it would have been an abuse of discretion for the trial court not to have allowed it. It is error to exclude cross-racial identification expert testimony only if the eyewitness identification of the defendant is a key element of the prosecution's case, the eyewitness identification is not substantially corroborated by evidence giving it independent reliability, and the defendant offers expert testimony on specific psychological factors shown by the record that could affect the accuracy of the identification but are not likely to be fully known to or understood by the jury. (People v. McDonald (1984) 37 Cal.3d 351, 377; see also People v. Sanders (1995) 11 Cal.4th 475). In this case, the eyewitness identification by Christopher Annis was key, but there was other evidence substantially connecting petitioner to the murder; petitioner admitted he was there at the scene; petitioner was caught in the car bearing the license plate number that Annis had seen, within 45 minutes of the murder; at the time petitioner was caught, he had a gun with him that had fired shots in the market. Nor does petitioner show any specific psychological factors that could have affected the accuracy of the identification.

Petitioner next alleges that trial counsel failed to cross-examine the Annis brothers.  He claims only that when cross-examining Allen Annis, the trial court abruptly stated that it wanted to finish with the witness that evening and that co-counsel was to be given the opportunity to cross-examine, and that trial counsel acquiesced. Petitioner makes no showing of what trial counsel failed to ask during the cross-examination that he did conduct, and what further cross-examination would have borne fruit to that would have changed the outcome of the trial.

Petitioner next alleges that trial counsel failed to adduce evidence of petitioner's intoxication level at the time of the crime. Petitioner claims that "among other things, such evidence would have enabled [petitioner] to provide a relatively ameliorative explanation concerning his inappropriate conduct on the video tape."  Petitioner does not claim, however, that such evidence would have affected the jury's determination of whether he was intoxicated at the time he committed the crimes, and if so, whether the intoxication was to such an extent that petitioner did not actually form the intent to commit the crimes.  Nor does petitioner make any showing, with documentary evidence or affidavits, as to what his intoxication level actually was at the time of the crime. (Harris, supra).

Petitioner's final allegation of ineffective assistance of counsel is that trial counsel failed to provide petitioner with effective assistance in postverdict proceedings, because trial counsel did not visit petitioner after the verdicts, and to date, despite repeated requests from petitioner's current counsel, has not turned over his trial file.  Petitioner, however, points to nothing specific in the postverdict proceedings that evidences a deficiency in performance at the postverdict stage (Swain, supra; Harris, supra).

Not having stated a prima facie case under Strickland, supra, petitioner's claim of ineffective assistance of counsel fails, regardless of whether any part of this claim is barred under Waltreus, supra, or Clark, supra.

(Am. Answer, Ex. G at 4-9.)

The conclusion of the California Superior Court that petitioner failed to demonstrate prejudice with respect to his claim that his trial counsel rendered ineffective assistance is not objectively unreasonable and should not be set aside.  Even assuming arguendo that counsel's failure to perform the actions suggested by petitioner was outside the wide range of professional assistance, petitioner has failed to show a "reasonable probability that, but for

/////

1  counsel's unprofessional errors, the result of the proceeding would have been different.  <u>See</u>

2  <u>Strickland</u>, 466 U.S. at 698.

3          As noted above, the evidence against petitioner was overwhelming.  Two

4  eyewitnesses described petitioner as one of the persons who ran out of the market immediately

5  after the shooting, carrying a gun.  Petitioner admitted he was at the scene of the crime.  A short

6  time later, petitioner and his co-defendant were apprehended in the getaway car with both of the

7  murder weapons and $50 each in cash.  Petitioner had shown one of the murder weapons to a

8  friend earlier in the day.  Further, there was substantial evidence presented at trial that more than

9  two persons were involved in the crime and petitioner's counsel highlighted this fact in his

10  closing argument.  (RT at 666-67.)  The prosecutor did not dispute that there might have been

11  one or two people with petitioner and his co-defendant at the time of the robbery and murder.

12  (<u>Id.</u> at 635, 645-46.)  Under these circumstances, as explained in detail by the California Superior

13  Court, trial counsel's failure to conduct the investigation now suggested by petitioner could not

14  have affected the outcome of the trial.  The decision of the California courts to the same effect is

15  not contrary to or an unreasonable application of federal law as set out in the <u>Strickland</u> decision.

16  Accordingly, petitioner is not entitled to relief on this claim.

17          c.  Counsel's Pattern and Practice of Ineffective Assistance

18          As noted, petitioner also argues that his trial counsel had a "pattern and practice"

19  of providing ineffective representation to his clients in criminal cases.  In support of this claim,

20  petitioner has filed documents pertaining to several cases in which his trial counsel represented

21  other criminal defendants, including one case in which a defendant's attempted murder

22  conviction was set aside based on a finding that petitioner's counsel rendered prejudicial

23  ineffective assistance.  (Am. Pet. at 9-11; P&A at 39-45 & Exs. W, X, Y, Z, AA.) (<u>Id.</u> at 41.)

24  Specifically, on November 30, 2001, the attempted murder conviction of one of trial counsel's

25  clients was set aside based in large part on counsel's complete failure to prepare his client for her

26  direct examination.  (Am. Pet., Ex. W.)  In another case petitioner's trial counsel was criticized

by the trial judge for failing to prepare one of his clients to testify on direct examination. (P&A at 42-43; Am. Pet., Exs. X, Y.) In yet another case petitioner's trial counsel failed to timely disclose critical defense evidence to the prosecution, resulting in the trial judge being compelled to give a jury instruction regarding counsel's discovery violation. (P&A at 43-44; Am. Pet., Ex. Z.) Petitioner also includes in support of this claim the declaration of the Director of the Sacramento County Indigent Defense Program, who declares that petitioner's trial counsel is no longer receiving panel appointments in homicide cases. (P&A at 45; Am. Pet, Ex AA.)[11] Finally, petitioner's current counsel represents that he has spoken with several attorneys who are raising "multifacted ineffectiveness challenges" in federal habeas corpus petitions challenging the representation provided by petitioner's trial counsel to their clients in state court. Petitioner argues that "the fact that [trial counsel] has repeatedly acted with incompetence is probative with regard to the issue of whether he acted with competence in this particular case." (P&A at 46.)

Petitioner's claim of ineffective assistance of counsel based on counsel's pattern-and-practice of substandard performance was raised for the first time in a petition for writ of habeas corpus filed in the Sacramento Superior Court on February 25, 2002. (Pet'r's Application for Order Staying Federal Habeas Proceedings lodged Feb. 25, 2002, Ex. A at 2-4.) The petition was denied on the merits in a reasoned decision dated March 14, 2002. (Decision of the Sacramento Superior Court, lodged December 8, 2005 (Superior Court decision).) A habeas petition raising this claim was filed in the California Court of Appeal and was summarily denied on April 11, 2002. (Decision of the California Court of Appeal, lodged November 4, 2005.) The California Supreme Court summarily denied review on July 10, 2002. (Id.; Pet'r's Status Report

---

[11] Respondent argues that the exhibits attached to the amended petition in support of petitioner's "pattern and practice" argument constitute inadmissible character, disposition, or propensity evidence and requests that the exhibits be stricken. (Am. Answer at 11-16.) Respondent's challenges to these exhibits have previously been rejected by this court. (May 1, 2002 Findings and Recommendations at 2 n.1.) For the reasons set forth in the May 1, 2002 findings and recommendations, respondent's challenges to the admissibility of Exhibits W, X, Y, Z, and AA are again rejected.

1   filed July 11, 2002, & Ex. A.)  Accordingly, petitioner's pattern-and-practice claim will be

2   reviewed pursuant to the standards set forth in the AEDPA.

3                    In state court, petitioner argued that his trial counsel had engaged in a pattern-and-

4   practice of providing ineffective assistance to his clients and that, in accordance with that pattern

5   and practice, he rendered ineffective assistance to petitioner.  (Superior Court decision at 2-3.)

6   Petitioner also argued that "because he is establishing a pattern and practice of ineffectiveness by

7   attorney Holmes in the current petition, he does not need to show prejudice."  (Id. at 3.)  The

8   Superior Court concluded, after a thorough review of the cases cited by petitioner in support of

9   this latter contention, that the prejudice prong of Strickland was not eliminated simply because

10  petitioner was alleging his trial counsel had a pattern-and-practice of providing ineffective

11  assistance.  (Id. at 3-12.)  Relying on its earlier decision denying petitioner's first habeas petition

12  filed in that court, the Superior Court concluded that petitioner failed to show prejudice because

13  "nothing . . . refuted in any way the eyewitness testimony at trial that [petitioner] came running

14  out of the market with a gun immediately after the shots were fired inside."  (Id. at 2.)  The

15  Superior Court also found that petitioner failed to establish that his trial attorney had engaged in

16  a pattern and practice of rendering ineffective assistance of counsel.  The court reasoned as

17  follows:

18              All petitioner realistically shows is one single other instance of
             ineffective assistance of counsel, occurring years after petitioner's
19           own trial.  Specifically, petitioner attaches in support of his second
             habeas petition a transcript of the new trial motion hearing in
20           People v. Lisa Castelone, Case No. CR 76351, held on November
             30, 2001, years after petitioner's own conviction, showing that
21           Judge McMaster found Mr. Holmes to have rendered ineffective
             assistance of counsel to defendant Castelone in a recent trial.
22           Petitioner also attaches a declaration under seal, from Fern
             Laethem, the director of this county's Indigent Defense Program,
23           that after Judge McMaster granted the new trial in Castelone, Mr.
             Holmes was investigated and removed from the Indigent Defense
24           Program's list of appointments for homicide cases, and notably not
             for all cases.

25
             Webster's New World Dictionary, Second College Edition (1968)
26           provides for a definition of "pattern" in the context of a behavior

1    pattern, as "a regular, mainly unvarying way of acting or doing."
     Webster's Third New International Dictionary (1986) provides for
2    a definition of "practice" as being "to do or perform often,
     customarily, or habitually" or to "engage regularly in."

3

4    A single instance of ineffective assistance of counsel, in another
     case tried years after this petitioner's case was tried, simply does
5    not, by itself, establish either a "pattern" or a "practice" or
     rendering ineffective assistance of counsel to clients at the time of
6    petitioner's own trial.  Thus, even if the prejudice prong were not
     required to be shown, petitioner's claim fails.

7    (Id. at 12.) (underlining in original.)

8         In this court, petitioner argues that "the establishment of a pattern and practice of

9    incompetence can dispense with or significantly reduce the need to demonstrate particularized

10   prejudice" and that "at a minimum [pattern and practice] evidence is highly relevant in assessing

11   a specific ineffectiveness claim."  (P&A at 39.)  In Sanders v. Ratelle, 21 F.3d 1446, 1460 (9th

12   Cir. 1994), the petitioner produced evidence that his trial counsel was disbarred due to a 10-year

13   pattern of misconduct.[12]  The petitioner in that case also claimed that his counsel's poor past

14   performance was relevant to his claim that his counsel rendered ineffective assistance when he

15   refused to interview a witness who had confessed to the crime of which his client was ultimately

16   convicted.  The Ninth Circuit Court of Appeals considered counsel's past pattern of

17   ineffectiveness in concluding that he had provided ineffective assistance in the case before it, but

18   also required the petitioner to demonstrate prejudice.  21 F.3d at 1460-61.  The essence of the

19   holding in Sanders was that a finding of prior ineffective assistance may in some instances be

20   relevant consideration of similar allegations in a later case, but that each case must be decided on

21

22        [12] Specifically, the trial counsel in question had been "disbarred from the practice of law
     ... [for] a course of conduct demonstrating a complete indifference to his legal and ethical duties,
23   to the great detriment of his clients."  Sanders v. Ratelle, 21 F.3d 1446, 1460 (9th Cir. 1994).
     The California State Bar Court findings of a "course of conduct" were based on specific instances
24   of "complete indifference" and "great detriment" to clients occurring over a period from 1979
     through 1987.  Id.  "In most of these instances, (counsel) was retained by clients and then did
25   nothing to investigate or further their cases."  Id.  Suffice it to say, counsel's conduct described in
     the Sanders decision was far more egregious than the conduct of petitioner's trial counsel in this
26   case.

                                    46

1    its own merits and the petitioner must demonstrate that prejudice resulted in his own case.  Id.;

2    Williams v. Woodford, 396 F.3d 1059, 1063 (9th Cir. 2005) (evidence that prosecutor had a

3    "pattern-or-practice" of discriminating on the basis of face in the exercise of peremptory

4    challenges was relevant to "buttress" petitioner's Batson claim); In re Vargas, 83 Cal. App. 4th

5    1125, 1134-36 (2000) (a finding of prior ineffective assistance may be relevant to the credibility

6    of the attorney's stated reason for failures to act in a particular case); see also Young v. Runnels,

7    435 F.3d 1038, 1043 (9th Cir. 2006) (holding that prejudice is not to be presumed even where the

8    trial lawyer was subject to disciplinary proceedings while representing a client and was

9    subsequently disbarred because such circumstances do "not mean that he is presumptively

10   incapable of providing effective assistance"); United States v. Mouzin, 785 F.2d 682, 696-98

11   (9th Cir. 1986) (same).

12          In this case, as found by the state trial and appellate courts and for the reasons set

13   forth above, petitioner has failed to show that he suffered prejudice as a result of his trial

14   counsel's performance.  Further, the undersigned is persuaded by the California Superior Court's

15   observation that the one prior instance of petitioner's trial counsel being found to have provided

16   ineffective assistance of counsel does not establish a "pattern and practice" of providing

17   ineffective assistance.  This conclusion is not altered by the fact that counsel was reprimanded by

18   a trial judge on two other occasions or that, for reasons unknown, petitioner's trial counsel is no

19   longer being assigned homicide cases by the local Indigent Defense Program.  See Young, 435

20   F.3d at 1043 ("[I]f the discipline rendered is indicative of counsel's substandard abilities, then

21   that deficiency should be manifested in counsel's courtroom behavior and trial conduct.")  For

22   these reasons, petitioner is not entitled to relief on this claim.

23          3.  Appellate Counsel

24          Petitioner claims that his appellate counsel rendered ineffective assistance in

25   failing to present a claim that the trial court erred by refusing to instruct the jury that "his

26   vicarious accountability for murder was dependent on a finding that the death was reasonably

1  foreseeable to petitioner." (P&A at 57.)  As explained above, there is no merit to petitioner's

2  claim that his trial was rendered fundamentally unfair by the trial court failure to give a jury

3  instruction on "reasonable foreseeability."  For this reason, petitioner's assertion that his

4  appellate counsel was ineffective for failing to raise such a claim also must fail.

5          E.  <u>Cumulative Effect of All Errors</u>

6          Petitioner's final claim is that the cumulative effect of all of the errors alleged in

7  connection with his trial requires that granting of relief.  (P&A at 4.)  This argument was rejected

8  by the California Court of Appeal on petitioner's direct appeal and by the California Supreme

9  Court in the first state habeas petition, both without comment.  (<u>See</u> Ex. D, I, J to Am. Answer.)

10          Where the cumulative effect of errors is so prejudicial that defendant is denied a

11  fair trial, habeas relief may be warranted.  <u>See</u> <u>United States v. Necoechea</u>, 986 F.2d 1273, 1282-

12  83 (9th Cir. 1993).  For the reasons set forth above with respect to each of the claims, petitioner

13  has not established that he was denied due process by the cumulative effect of the claims asserted

14  here.  Accordingly, petitioner is not entitled to relief on this claim.

15          For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

16  application for a writ of habeas corpus be denied.

17          These findings and recommendations are submitted to the United States District

18  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

19  days after being served with these findings and recommendations, any party may file written

20  objections with the court and serve a copy on all parties.  Such a document should be captioned

21  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

22  shall be served and filed within ten days after service of the objections.  The parties are advised

23  /////

24  /////

25  /////

26  /////

1  that failure to file objections within the specified time may waive the right to appeal the District

2  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3  DATED: March 15, 2006.

4

5  _____

6  DALE A. DROZD
   UNITED STATES MAGISTRATE JUDGE

7  DAD:8:galvan1142.hc

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26